UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JAMES LO,

                                Petitioner,

- against-

ST. GEORGE'S UNIVERSITY,

                                Respondent.
----------------------------------------------------------------X
FEUERSTEIN, J.

**OPINION AND ORDER**
14 CV 3577 (SJF)(SIL)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ NOV 24 2014 ★

LONG ISLAND OFFICE

On or about April 30, 2014, petitioner James Lo ("petitioner") commenced a proceeding in the Supreme Court of the State of New York, County of Suffolk ("the state court") against St. George's University ("SGU") pursuant to Article 78 of the New York Civil Practice Law and Rules ("the Article 78 proceeding") seeking, *inter alia*, to reverse his dismissal from SGU's School of Medicine, to have him reinstated into SGU's School of Medicine for the purpose of sitting for the United States Medical Licensing Examination ("USMLE"), to compel SGU to declare him eligible to sit for the USMLE, and to recover special damages for lost earnings he will sustain as a result of not obtaining a medical degree, including the salary he would have earned if he was conferred a medical degree. On June 6, 2014, St. George's University, Ltd. ("SGU Ltd." or "respondent") filed a notice of removal pursuant to 28 U.S.C. §§ 1441(b) and 1446, removing the Article 78 proceeding to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). Pending before the Court are: (1) petitioner's motion to remand this matter to the state court pursuant to 28 U.S.C. § 1447(c); (2) respondent's motion to

1

dismiss the amended petition[1] pursuant to Rules 12(b)(2), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, insufficient service of process and failure to state a claim upon which relief can be granted, respectively; and (3) petitioner's cross motion for, *inter alia*, (a) an extension of time to respond to respondent's motion to dismiss and (b) jurisdictional discovery. For the reasons stated herein, petitioner's motion to remand is granted, respondent's motion to dismiss is denied with leave to renew in the state court and petitioner's cross motion is denied as moot.

I. Background

A. Factual Allegations[2]

Petitioner is a resident of the State of New Jersey. (Petition ["Pet."], ¶ 1).

SGU is an unincorporated association owned and operated by SGU Ltd., a foreign corporation incorporated, and with its principal place of business, on the island of Grenada in the West Indies. (Notice of Removal ["Rem."], ¶ 9).

Petitioner was accepted into SGU's School of Medicine in December 2003, (Pet., ¶ 5), as a member of the January 2004 entering class. (Pet., ¶ 6).

Petitioner "sat for and successfully passed the USMLE Step 1 Examination in January 2007[,]" (Pet., ¶ 7; see also id., ¶ 39), and "successfully completed all of his didactic course work

---

[1] On June 10, 2014, four (4) days after the proceeding was removed to this Court, petitioner filed an amended petition, *inter alia*, withdrawing his claim for damages and seeking "equitable relief only." (Amended Petition at 12).

[2] Since subject matter jurisdiction is ascertained as of the date the notice of removal was filed, i.e., prior to the filing of the amended petition, for the purposes of petitioner's motion to remand challenging this Court's subject matter jurisdiction, the facts are taken from the original petition and the notice of removal.

2

and clinical requirements by January 2009[,]" (Pet., ¶ 8; see also id., ¶ 39). According to petitioner, since his academic performance met SGU's academic requirements for graduation, and he met his financial obligations, he only had to pass both parts of the USMLE Step 2 Examination, i.e., the Clinical Knowledge ("CK") Examination and the Clinical Skill Examination, in order to graduate from SGU's School of Medicine. (Pet., ¶¶ 8, 39).

Petitioner sat for the CK Examination in 2009, (Pet., ¶ 9), shortly after his mother had passed away, (Pet., ¶ 10), and missed passing it "by just a few points," (id.). According to petitioner, when he applied for the USMLE Step 2 Examination in 2009, "he was issued a token, which verified his eligibility for the examination * * * [and] was instructed that the token would be valid for five years." (Pet., ¶ 15).

After receiving the results of the CK Examination, petitioner went to work managing his father's medical practice, which "proved healing for both [him] and his father, and for the time the rest of [his] life was essentially put on hold." (Pet., ¶¶ 12-13). In the Fall of 2013, approximately four (4) years after he first took the CK Examination, petitioner applied to retake the CK Examination. (Pet., ¶ 16). According to petitioner, he "was aware that the USMLE regulations [require that] USMLE Steps 1, 2 and 3 must be completed with [sic] seven years from the date of the test-takers first attempt at the USMLE Step 1[,]" (Pet., ¶ 17), and, thus, he "planned to complete the USMLE Step 2 examination prior to January 18, 2014 and request special permission from the USMLE to take the Step 3 examination outside of the seven year time limitation." (Pet., ¶ 17).

Petitioner's application to retake the CK Examination was denied and the USMLE instructed him "to complete an Interactive Web Applications (IWA) form which verifies an

applicants [sic] medical school credentials." (Pet., ¶ 18). According to petitioner, although he completed the necessary IWA form, the USMLE could not process it and instructed him to contact SGU. (Pet., ¶ 19).

Upon contacting the registrar's office at SGU, petitioner spoke with Patty Manetta, who instructed him to contact Leslie Marino ("Marino"), who worked in the Dean's Office on special situations. (Pet., ¶ 20). Petitioner received no response from Marino to either the four (4) emails he sent to her from December 12-20, 2013, (Pet., ¶¶ 21-23), or the "numerous voicemails" he left for her during December 2013. (Pet., ¶ 24).

On December 23, 2013, petitioner spoke "briefly" with Marino by telephone, "but she was unable to clarify [his] eligibility to sit for the USMLE Step 2 examination." (Pet., ¶ 25). Petitioner received no response from Marino to his three (3) subsequent emails to her. (Pet., ¶¶ 26-27). However, on December 31, 2013, petitioner spoke with Marino by telephone "to discuss his eligibility to sit for the USMLE Step 2 examination and she mentioned * * * that [he] had been dismissed from [SGU]." (Pet., ¶ 28). According to petitioner, when he told Marino that "[t]his was the first time [he] had been aware of a dismissal from [SGU] and had never been previously notified that he was dismissed[,]" (id.), she advised him "that notification of student dismissal from [SGU] is sent to a student's school e-mail." (Id.) Petitioner denies receiving "any notification of dismissal from [SGU], nor any communication regarding any disciplinary action or warnings as to a dismissal from [SGU][,]" (id.), and claims that he "had no [prior] knowledge that he was dismissed from [SGU]." (Id.)

Petitioner received no response to either his subsequent emails to Marino and Dr. Stephen Weitzman ("Dr. Weitzman"), a dean at SGU, on January 2 and 6, 2014, or a certified letter that

4

he sent to Dr. Weitzman on January 23, 2014; nor did he receive "any further communication from [SGU] regarding his status as a student at [SGU] or his eligibility to sit for the USMLE Step 2 examination." (Pet., ¶¶ 29-33, 38).

On March 3, 2014, petitioner's sister, Dr. Vivian Lo ("Dr. Lo"), who, in her capacity as "the co-director of the medical student clerkship at St. Barnabas [Medical Center] [] is thus involved with [SGU]," (Pet., ¶ 34), sent an email to Dr. Weitzman "to inquire as to [petitioner's] status at [SGU] and his eligibility to sit for the USMLE Step 2 examination." (Id.) Dr. Weitzman responded to Dr. Lo that same date, indicating that he would "look into the situation * * * and get back to [her]." (Pet., ¶ 35). On April 17, 2014, Dr. Weitzman sent an email to Dr. Lo indicating, in relevant part:

> "It has taken me some time to review relevant regulatory and legal issues. The problem revolves around the time from matriculation in medical school to graduation. [SGU's] guidelines, part of the US Department of Education ["US DOE"] approval of SGU, have set the limit at six years. The six years derives from a four year curriculum and allows for two additional years for extenuating circumstances. [Petitioner] has already past [sic] the 10 year mark, since he matriculated in January 2004. His overall record in medical school is too weak to convince SGU to challenge this major legal/regulatory issue involving the US DOE. Although we are sympathetic with the problems he has had to deal with, we cannot consider offering him an MD degree, not only because of the regulatory issue but also because his overall performance in medical school is not compatible with our standards.
>
> If he wants a Masters Degree in Medical Science, please ask him to write to me and request one. I will then discuss it with the other deans."

(Pet., Ex. 14). According to petitioner, he was never "put on notice" of the requirement that he must complete medical school within six (6) years. (Pet., ¶ 48).

5

B.  Procedural History

On or about April 30, 2014, petitioner commenced this Article 78 proceeding against SGU in the state court, alleging: (1) that SGU "breached its own terms and conditions set forth for graduation and acted arbitrarily and capriciously, irrationally, and in bad faith * * * in dismissing him from [its School of Medicine] and not declaring him eligible to sit for the USMLE Step 2 examination[,]" (Pet., ¶ 39; see also id., ¶¶ 40, 46, 47, 48, 55); and (2) that he "received no due process as to his dismissal from [SGU][,]" (Pet., ¶ 49), and "was given no opportunity to challenge his dismissal from [SGU]," (Pet., ¶ 53), since (a) he was not notified of his dismissal until the December 31, 2013 telephone conversation with Marino, (Pet., ¶¶ 50, 52), (b) "no faculty or staff at [SGU] communicated with him further and failed to respond to any of his e-mails or certified letter" after that conversation with Marino, (Pet., ¶ 50; see also id., ¶ 53), and (c) he never received "any written notification of his dismissal from [SGU], nor any notifications or warnings prior to a dismissal[,]" (Pet., ¶ 51). Petitioner seeks judgment: (1) declaring that SGU's actions were arbitrary and capricious; (2) reversing his dismissal from, and reinstating him into, SGU's School of Medicine "for the purpose of sitting for USMLE examinations," (Pet. at 12); (3) "compelling [SGU] to declare [him] eligible to sit for the USMLE examinations," (id.); and (4) awarding him (a) "special damages for a [sic] lost earnings as a result of not obtaining a medical degree, including the salary [he] would have earned if he was conferred a medical degree and other damages," (id.), and (b) costs and attorney's fees. (Id.)

On June 6, 2014, respondent filed a notice of removal pursuant to 28 U.S.C. §§ 1441(b) and 1446, removing the Article 78 proceeding to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). Pending before the Court are: (1) petitioner's motion to

remand this matter to the state court pursuant to 28 U.S.C. § 1447(c); (2) respondent's motion to dismiss the amended petition pursuant to Rules 12(b)(2), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, insufficient service of process and failure to state a claim upon which relief can be granted, respectively; and (3) petitioner's cross motion for, *inter alia*, (a) an extension of time to respond to respondent's motion to dismiss and (b) jurisdictional discovery.

II. DISCUSSION

A. Determination of Motions

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) (citing Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 93-102, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)). "Without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case." Id. at 431, 127 S. Ct. 1184 (quotations and citation omitted). Since petitioner's motion to remand challenges this Court's subject matter jurisdiction, it will be resolved first.

B. Motion to Remand

Petitioner contends, *inter alia*, that this action must be remanded to the state court on the basis that this Court does not have subject matter jurisdiction under 28 U.S.C. § 1332(a) because:

(1) he filed an amended petition on June 10, 2014, four (4) days after respondent removed the Article 78 proceeding to this court, seeking equitable relief only; (2) respondent has failed to establish (a) the existence of complete diversity between the parties and (b) that the amount in controversy exceeds the statutory jurisdictional amount of seventy-five thousand dollars ($75,000.00); and (3) the state court has exclusive jurisdiction of Article 78 proceedings.

### 1. Subject Matter Jurisdiction

Pursuant to the removal statute, 28 U.S.C. § 1441(a), a civil action filed in state court may only be removed by a defendant to federal court if the district court has original subject matter jurisdiction over the plaintiff's claims. See Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 327 (2d Cir. 2011). "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." Gunn v. Minton, — U.S. —, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013) (quotations and citation omitted); see also NASDAQ OMX Grp., Inc. v. UBS Sec., LLC, — F.3d —, 2014 WL 5486457, at * 6 (2d Cir. Oct. 31, 2014) ("[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." (quotations and citation omitted)); European Cmty. v. RJR Nabisco, Inc., 764 F.3d 129, 143 (2d Cir. 2014) ("Federal courts are powerless to adjudicate a suit unless they have subject matter jurisdiction over the action.") "Congress has granted district courts original jurisdiction over cases in which there is a federal question, see 28 U.S.C. § 1331, and certain cases between citizens of different states, so long as the requirements of complete diversity and amount in controversy are met, see 28 U.S.C. § 1332." Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013).

Removal jurisdiction must be "strictly construed," Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002); see also Purdue Pharma, 704 F.3d at 213 ("[F]ederal courts construe the removal statute narrowly * * *" (quotations and citation omitted)), and any doubts resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of states." In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007); see also Purdue Pharma, 704 F.3d at 213.

"[T]he jurisdiction of the court depends upon the state of things at the time of the action brought." Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 570, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004) (quoting Mollan v. Torrance, 22 U.S. 537, 6 L.Ed. 154, 9 Wheat. 537, 539 (1824)); see also Rockwell Int'l Corp. v. U.S., 549 U.S. 457, 473, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007). This "time-of-filing" rule "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing-whether the challenge [to jurisdiction] be brought shortly after filing, after the trial, or even for the first time on appeal." Grupo, 541 U.S. at 570-571, 124 S.Ct. 1920. Since "[r]emovability is determined from the record as of the time the petition for removal is filed[,]" Yong Qin Luo v. Mikel, 625 F.3d 772, 775 (2d Cir. 2010) (quotations and citation omitted); Hallingby v. Hallingby, 574 F.3d 51, 56 (2d Cir. 2009) ("[T]he existence of federal subject matter jurisdiction over an action removed from state court to federal court is normally to be determined as of the time of removal"); Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57 (2d Cir. 2006) ("[J]urisdictional facts, such as the amount in controversy," are generally evaluated "on the basis of the pleadings, viewed at the time when the defendant files the notice of removal"), events occurring

9

subsequently, such as petitioner's filing of an amended petition seeking equitable relief only, are irrelevant to a determination of this Court's subject matter jurisdiction. See, e.g. Yong Qin Luo, 625 F.3d at 776 ("[A] plaintiff cannot seek to deprive a federal court of jurisdiction by reducing her demand to $75,000 or less once the jurisdictional threshold has been satisfied.")

"[I]t is well established that the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." Herrick Co., Inc. v. SCS Commc'ns, Inc., 251 F.3d 315, 322-323 (2d Cir. 2001); see also Universal Licensing Corp. v. Paola del Lungo S.p.A., 293 F.3d 579, 581 (2d Cir. 2002) ("[T]he party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction." (quotations and citation omitted)). Accordingly, "[a] party seeking removal bears the burden of showing that federal jurisdiction is proper." Montefiore Med. Ctr., 642 F.3d at 327; see also California Pub. Employees' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004) (holding that on a motion to remand, "the defendant bears the burden of demonstrating the propriety of removal." (quotations and citation omitted)); Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000) (holding that a party seeking to remove an action to federal court bears "the burden of establishing that the requirements for diversity jurisdiction were met.")

    a.  Diversity of Citizenship

With an exception not relevant here, diversity jurisdiction exists, *inter alia*, in "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between– * * * citizens of a State and citizens or subjects of a foreign state * * *." 28 U.S.C. § 1332(a)(2). Section 1332 "require[s] complete diversity between all

plaintiffs and all defendants." Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89, 126 S. Ct. 606, 163 L. Ed. 2d 415 (2005); see also European Cmty., 764 F.3d at 143 ("Section 1332 requires complete diversity between opposing parties.")

i. Citizenship of Plaintiff

"An individual's citizenship * * * is determined by his domicile. * * * Domicile is the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000). Thus, it is clear from the allegations in the original petition that, for purposes of this Court's diversity jurisdiction, plaintiff was a citizen of the State of New Jersey at the time the notice of removal was filed.

ii. Citizenship of Defendant

With exceptions not relevant here, state law governs whether a party other than an individual or corporation has the capacity to be sued. See Fed. R. Civ. P. 17(b)(3); La Russo v. St. George's Univ. Sch. of Med., 747 F.3d 90, 95 (2d Cir. 2014). In La Russo, the Second Circuit found that SGU's School of Medicine, as an unincorporated association, is "not an entity with capacity to be sued under state law." La Russo, 747 F.3d at 95. Likewise, SGU, as an unincorporated association, is not, itself, an entity with the capacity to be sued under New York State law. "[A]s a non-juridical entity that cannot be sued, [SGU's] being named as a purported defendant does not destroy diversity jurisdiction." Id. at 97. Rather, SGU Ltd., "as the owner and operator of the non-juridical entity that [plaintiff] attempted to sue," id. at 95-96, is the "real

11

party defendant in interest." Id. at 96-97. Thus, it is the citizenship of SGU Ltd., the real party defendant in interest, that is relevant for purposes of determining whether there is diversity jurisdiction.

With exceptions not relevant here, a foreign corporation is "deemed to be a citizen of every * * * foreign state by which it has been incorporated and of the * * * foreign state where it has its principal place of business * * *." 28 U.S.C. § 1332(c)(1). Accordingly, SGU Ltd. is a citizen of the island of Grenada in the West Indies and there was, thus, complete diversity of citizenship between the parties to this proceeding at the time of its removal to this Court.

b.   Amount in Controversy

28 U.S.C. § 1446(c)(2) provides, in relevant part, that where removal is sought based upon this Court's diversity jurisdiction,

> "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that– (A) the notice of removal may assert the amount in controversy if the initial pleading seeks– (i) nonmonetary relief; or (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)."

"Where * * * jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with competent proof and justify its allegations by a preponderance of evidence." United Food & Commercial Workers Union, Local 919, AFL-CIO v. Centermark Properties Meriden Square, Inc., 30 F.3d 298, 305 (2d Cir. 1994) (quotations, alteration and citation omitted); see also Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239,

243 (2d Cir. 2014) ("[W]here jurisdictional facts are placed in dispute, * * * the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (quotations and citations omitted)). Thus, respondent must demonstrate by a preponderance of evidence that petitioner's original petition asserts claims exceeding the statutory jurisdictional amount.

To determine whether the defendant has met its burden of proving that the claim is in excess of the jurisdictional amount, courts "look first to the plaintiff's complaint and then to [the defendant's] petition for removal." Mehlenbacher, 216 F.3d at 296. The "established view" is that the "plaintiff is the master of its claim whose monetary demand is to be accorded deference." United Food, 30 F.3d at 305 (quotations, alteration and citation omitted); see also Yong Qin Luo, 625 F.3d at 775 ("[U]nless the law gives a different rule, the sum claimed by plaintiff controls if the claim is apparently made in good faith.") "However, if the pleadings are inconclusive, then the courts may look to documents outside the pleadings to other evidence in the record to determine the amount in controversy." Yong Qin Luo, 625 F.3d at 775; accord United Food, 30 F.3d at 305.

Although plaintiff did not specify an amount sought for the special and "other" damages claimed in his original petition, respondent contends that his claim seeking to recover "special damages for a [sic] lost earnings as a result of not obtaining a medical degree, including the salary [he] would have earned if he was conferred a medical degree," (Pet. at 12), establishes that the amount in controversy satisfies the jurisdictional amount. However, "if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed * * *, the suit will be dismissed." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283,

289, 58 S. Ct. 586, 82 L. Ed. 845 (1938); see also Hall v. EarthLink Network, Inc., 396 F.3d 500, 507 n. 5 (2d Cir. 2005) ("In a diversity case, if a court makes a face-of-the-complaint determination that the $75,000 amount in controversy cannot be recovered to a legal certainty, the case is dismissed for lack of subject matter jurisdiction" (quotations and citation omitted)); Scherer v. Equitable Life Assurance Soc'y of United States, 347 F.3d 394, 397 (2d Cir. 2003) (holding that in order to overcome the rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy, "the party opposing jurisdiction must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." (quotations and citation omitted)); Local 538 United Bhd. of Carpenters and Joiners of Am. v. United States Fid. and Guar. Co., 154 F.3d 52, 54 (2d Cir. 1998) ("[I]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." (brackets in original) (quoting Chase Manhattan Bank, N.A. v. American Nat'l Bank and Trust Co. of Chicago, 93 F.3d 1064, 1070 (2d Cir. 1996))).

Section 7806 of the New York Civil Practice Law and Rules ("CPLR") provides, in relevant part, that "[a]ny restitution or damages granted to the petitioner must be incidental to the primary relief sought by the petitioner, and must be such as he might otherwise recover on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity." Thus, "an Article 78 tribunal can award damages only if (1) the damages are incidental to the primary relief sought, and (2) the relief is such that the petitioner could have recovered on the same set of facts in a separate suit maintainable in the Supreme Court against the same officer in his official capacity." Gutierrez v. Coughlin, 841 F.2d 484, 486 (2d Cir. 1988). "[W]hether the monetary relief is incidental to the primary claim[] is

14

dependent upon the facts and issues presented in a particular case[.]" Gross v. Perales, 72 N.Y.2d 231, 236, 532 N.Y.S.2d 68, 527 N.E.2d 1205 (N.Y. 1988).

"[M]onetary injury incurred as a result of agency action does not necessarily constitute incidental damages simply because a court later finds the action to have been arbitrary and capricious." Metropolitan Taxicab Bd. of Trade v. New York City Taxi & Limousine Comm'n, 115 A.D.3d 521, 982 N.Y.S.2d 88, 90 (N.Y. App. Div. 2014). Rather, "incidental damages are generally confined to monies that an agency either collected from or withheld from a petitioner and then was obligated to reimburse after a court annulled a particular agency determination." Id., 115 A.D.3d 521, 982 N.Y.S.2d at 91; see also Gross, 72 N.Y.2d at 236, 532 N.Y.S.2d 68 (finding that incidental damages are money that the agency is required to pay upon the annulment or nullification of the underlying administrative action, i.e., the agency would still have been obligated to reimburse the petitioner even had the petitioner not requested it); Siegel, N.Y. Practice § 570 (5th ed.) ("[M]oney is incidental if a grant of the relief that is the primary aim of the Article 78 proceeding [i.e., a finding that an administrative determination is arbitrary and capricious] would make it a 'statutory duty' of the respondent to pay the petitioner the sum sought." (quoting Gross, 72 N.Y.2d at 236, 532 N.Y.S.2d 68)). "While a statutory duty is not essential for a finding of incidental damages, the key point [for purposes of incidental damages] is that the obligation to reimburse must arise from the agency's withholding of amounts it should have paid to the petitioner or its retention of amounts it should not have collected." Metropolitan Taxicab, 115 A.D.3d 521, 982 N.Y.S.2d at 91.

Since respondent clearly has no legal obligation to reimburse petitioner for the damages he seeks, i.e., his lost earnings and salary as a result of not obtaining a medical degree, even if its

15

discretionary determinations to dismiss petitioner from the SGU School of Medicine and to declare him ineligible to sit for the CK Examination are annulled, the damages petitioner seeks in the original petition are not incidental damages. See, e.g. Oberoi v. Dennison, 55 A.D.3d 1033, 865 N.Y.S.2d 394, 395 (N.Y. App. Div. 2008) (holding that damages for lost wages resulting from the denial of the petitioner's request for parole release are "not available in the context of [a] proceeding to review a discretionary parole release determination inasmuch as th[o]se damages are not incidental to the primary relief sought.") Thus, it appears to a legal certainty from the face of the original petition that petitioner could not recover the monetary damages he initially sought in this Article 78 proceeding at the time this action was removed to this Court and, therefore, respondent has not met its burden of demonstrating by a preponderance of evidence that petitioner's original petition asserts viable claims exceeding the statutory jurisdictional amount. Accordingly, petitioner's motion to remand this action to the state court pursuant to 28 U.S.C. § 1447(c) is granted and this action is remanded to the Supreme Court of the State of New York, County of Suffolk for lack of subject matter jurisdiction.[3]

III. Conclusion

For the reasons stated herein, petitioner's motion to remand this action to the state court pursuant to 28 U.S.C. § 1447(c) is granted and this action is remanded to the Supreme Court of the State of New York, County of Suffolk for lack of subject matter jurisdiction; respondent's motion to dismiss is denied with leave to renew in the state court; and petitioner's cross motion

---

[3] In light of this determination, it is unnecessary to consider petitioner's remaining contention; respondent's motion to dismiss is denied with leave to renew in the state court; and petitioner's cross motion is denied as moot.

16

is denied as moot. The Clerk of the Court is directed to close this case; to mail a certified copy of this order to the clerk of the Supreme Court of the State of New York, County of Suffolk pursuant to 28 U.S.C. § 1447(c); and to serve notice of entry of this Order on all parties in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure.

SO ORDERED.                                  s/ Sandra J. Feuerstein

                                             SANDRA J. FEUERSTEIN
                                             United States District Judge

Dated: November 24, 2014
       Central Islip, N.Y.